# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | |
|---|---|
| **ANGELA RENEA MCGHEE,** ) | |
| Plaintiff ) | |
| ) | Civil Action No. 1:21cv00014 |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| **KILOLO KIJAKAZI,** ) | |
| **Acting Commissioner of** ) | By: PAMELA MEADE SARGENT |
| **Social Security,** ) | United States Magistrate Judge |
| Defendant ) | |

*I. Background and Standard of Review*

Plaintiff, Angela Renea McGhee, ("McGhee"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that she was not eligible for supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C. § 1381 *et seq*. Jurisdiction of this court is pursuant to 42 U.S.C. § 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition. Neither party has requested oral argument; therefore, this case is ripe for decision.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence.'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that McGhee protectively filed her application[1] for SSI[2] on June 16, 2017, alleging disability as of June 16, 2017,[3] based on migraine headaches;

[1] McGhee also filed an application for disability insurance benefits, ("DIB"); however, she met the insured status requirements only through December 31, 2015. (R. at 94, 236-40.) Therefore, McGhee's claim before this court is on her application for SSI benefits.

[2] On January 21, 2011, and March 4, 2013, McGhee filed applications for DIB and SSI, alleging disability as of July 7, 2010. (R. at 68, 91.) By decisions dated January 4, 2013, and March 1, 2016, the ALJ denied McGhee's claims. (R. at 68-82, 91-106.) After the ALJ issued his March 1, 2016, decision, McGhee pursued her administrative appeals, but the Appeals Council denied her request for review. McGhee then filed an action in this court seeking review of the ALJ's unfavorable decision. *See McGhee v. Berryhill*, Case No. 1:17cv00024. By order dated November 14, 2018, the court affirmed the final decision of the Commissioner denying McGhee's claims for DIB and SSI benefits.

Pursuant to the Fourth Circuit's opinion in *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473 (4th Cir. 1999), and in accordance with Social Security Acquiescence Ruling, ("AR"), 00-1(4), "[w]hen adjudicating a subsequent disability claim arising under the same…title of the Act as the prior claim, an adjudicator determining whether a claimant is disabled during a previously unadjudicated period must consider such a prior finding as evidence" and consider its persuasiveness in light of all relevant facts and circumstances. A.R. 00-1(4), 65 Fed. Reg. 1936-01, at *1938, 2000 WL 17162 (Jan. 12, 2000). It is noted that, when *Albright* was decided, the agency "weighed" opinion evidence under different standards. *See* 56 Fed. Reg. 36932-01 at *36960, 1991 WL 142361 (Aug. 1, 1991). Those standards have been superseded by 20 C.F.R. § 416.920c, which prescribes how to consider persuasiveness of opinion evidence and prior administrative findings in claims made on or after March 27, 2017. Because this claim was made after March 27, 2017, the ALJ is required to consider prior ALJ decisions and Appeals Council findings under *Albright. See* Program Operations Manual System, ("POMS"), DI 24503.005, available at http://policy.ssa.gov/poms.nsf/lnx/0424503005 (effective Apr. 13, 2021) (explaining the categories of evidence).

The ALJ in this case noted he reviewed the previous 2013 and 2016 decisions. (R. at 30.) The ALJ noted these decisions were "unpersuasive." (R. at 30.) The ALJ noted that some of the limitations identified in the prior decisions remained generally appropriate, such as a sit/stand option, reduced foot control operations, postural activities, overhead reaching and environmental exposures; however, he found greater standing, walking, crouching, lifting and carrying limitations were warranted to address the cumulative effects of McGhee's impairments. (R. at 30.) In addition, the ALJ found that the evidence received in the current claim did not establish any severe mental impairment during the period at issue. (R. at 30.)

[3] McGhee initially alleged a disability onset date of March 2, 2016; however, she later amended her alleged onset date to June 16, 2017. (R. at 262.)

depression and problems with her knees, back, shoulders, hip and neck. (Record, ("R."), at 18, 241-49, 262, 267, 291, 313.) The claim was denied initially and on reconsideration. (R. at 155-75.) McGhee requested a hearing before an administrative law judge, ("ALJ"). (R. at 176.) A hearing was held on June 10, 2019, at which McGhee was represented by counsel. (R. at 40-63.)

By decision dated December 11, 2019, the ALJ denied McGhee's claim. (R. at 18-33.) The ALJ found McGhee had not engaged in substantial gainful activity since June 16, 2017, the application date and amended onset date. (R. at 20.) The ALJ determined McGhee had severe impairments, namely, residual effects of left total knee arthroplasty; residual effects of cervical spine fusion; lumbar spine spondylosis; sacroiliac, ("SI"), joint dysfunction; migraines; hypertension; and scapulothoracic syndrome, but he found McGhee did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 20, 22.)

The ALJ found McGhee had the residual functional capacity to perform sedentary[4] work, except she could occasionally perform postural activities but could not kneel, crouch, crawl or climb ladders, ropes or scaffolds; she could occasionally reach overhead; she should avoid use of foot controls with the left lower extremity; she could occasionally be exposed to noise and vibrations, but should avoid exposure to industrial hazards; and she required a sit/stand option for one to two minutes every hour. (R. at 23.) The ALJ found McGhee was unable to perform any past relevant work. (R. at 31.) Based on McGhee's age, education, work history and residual

---

[4] Sedentary work involves lifting items weighing up to 10 pounds with occasional lifting or carrying of articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 416.967(a) (2021).

functional capacity and the testimony of a vocational expert, the ALJ found a significant number of jobs existed in the national economy that McGhee could perform, including the jobs of an assembler, an addressing clerk and a cuff folder. (R. at 31-32, 60-61.) Thus, the ALJ concluded McGhee was not under a disability as defined by the Act and was not eligible for SSI benefits. (R. at 32.) *See* 20 C.F.R. § 416.920(g) (2021).

After the ALJ issued his decision, McGhee pursued her administrative appeals, (R. at 233-34), but the Appeals Council denied her request for review. (R. at 2-6.) McGhee then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (2021). This case is before this court on the Commissioner's motion for summary judgment filed May 10, 2022.[5]

## II. Facts

McGhee was born in 1970, (R. at 31, 44), which, at the time of the filing of her application, classified her as a "younger person" under 20 C.F.R. § 416.963(c). She has a high school education and past relevant work as an assistant chief animal control officer. (R. at 44, 268-69.) McGhee testified she experienced neck pain daily. (R. at 48.) She stated she wore a knee brace "all the time" and, at times, used crutches or a cane. (R. at 55.) McGhee stated she stayed in her pajamas all day watching television or reading books. (R. at 58.) In terms of activities of daily living, McGhee reported she had no difficulty performing her personal care; helped care for her youngest child, who was five years old on the date she filed her application; prepared

---

[5] McGhee did not file a motion for summary judgment. She did, however, file a memorandum in support of her social security appeal. (Docket Item No. 18.)

meals daily; washed laundry with help; shopped in stores; and visited with family. (R. at 280-84.)

In rendering his decision, the ALJ reviewed records from William Carne, Ph.D., a state agency psychologist; Dr. Robert McGuffin, M.D., a state agency physician; Linda Dougherty, Ph.D., a state agency psychologist; Dr. Jack Hutcheson, M.D., a state agency physician; MSMG Pain Management; Wellmont Medical Associates; Johnston Memorial Hospital; BHMA Interventional Pain Management; Duke Health; and Dr. Emily Shields, M.D., a neurologist.

By way of background, McGhee has a remote history of multiple left knee surgeries, including a total knee arthroplasty in 2008. (R. at 25, 482, 1071.) In March 2012, x-rays of McGhee's left shoulder showed mild acromioclavicular, ("AC"), joint degenerative changes. (R. at 394.) In September 2012, an MRI of McGhee's lumbar spine showed facet arthritis at the L4-L5 level. (R. at 360.) In 2015, McGhee underwent an anterior cervical discectomy and fusion. (R. at 414-15.) McGhee continued to do well until she injured her left shoulder in a motor vehicle accident in July 2015. (R. at 528-36.) On July 2, 2015, x-rays of McGhee's left shoulder were normal. (R. at 527.)

On January 5, 2016, McGhee saw Dr. Alison Whitman, M.D.,[6] for complaints of left hip pain. (R. at 940.) McGhee's examination findings were normal, except she had limited range of motion of the left hip. (R. at 942-43.) X-rays performed that day of McGhee's left hip were unremarkable. (R. at 480.) Based on McGhee's complaints of back pain with sciatica and muscle spasms, x-rays of her lumbar spine performed on January 20, 2016, were unremarkable. (R. at 548-49.)

---

[6] It appears that Dr. Whitman has treated McGhee since 2010. (R. at 74.)

McGhee treated throughout 2016 for complaints of migraine headaches, left knee and foot pain, left shoulder pain and neck pain. (R. at 556, 561, 567, 572, 632, 638, 645.) During this time, McGhee denied suicidal ideations, hallucinations, behavioral problems, confusion, dysphoric mood, decreased concentration and agitation (R. at 617, 640, 947.) McGhee also reported her depression, insomnia and anxiety were stable on medication and medication helped her pain, which made performing her activities of daily living tolerable. (R. at 621, 645, 654.) Examinations showed McGhee had normal reflexes, muscle tone and coordination and normal mood, affect, behavior, judgment and thought content. (R. at 537, 612, 635, 641, 657, 943.)

From 2016 through 2019, McGhee saw Dr. Thomas Sutton M.D., Dr. Katherine Roden, M.D., and Virginia Thurston, N.P., for pain management, which included injections and bilateral medial branch blocks, related to scapulothoracic syndrome, back, left knee and hip pain. (R. at 485-527, 797-802, 957-1013.) Based on McGhee's complaints of low back pain, an MRI of her lumbar spine performed on April 6, 2016, was unremarkable. (R. at 508.) On April 13, 2016, an MRI of McGhee's left hip was unremarkable. (R. at 525.) Based on McGhee's complaints of left shoulder pain, x-rays of her left shoulder performed on June 14, 2016, were normal and an MRI of her cervical spine performed on July 14, 2016, showed status post anterior fusion at the C6-C7 disc space and mild annular bulges at the C5-C6 and C7-T1 disc space. (R. at 506, 521.)

From July through December 2016, McGhee saw Dr. Emily Shields, M.D., a neurologist, for migraine headaches. (R. at 787-96.) At her initial office visit in July, McGhee reported feeling tired, insomnia/sleep disturbances, anxiety, depression, irritability and memory lapses or loss. (R. at 793.) At follow up visits, McGhee reported insomnia/sleep disturbances. (R. at 787, 790.) McGhee's extremities had no edema and normal digits; her mood and affect were normal; her attention skills

were normal; her speech was fluent and spontaneous; she exhibited no involuntary movements or obvious motor deficits; her gait and station were sufficient to undergo exercise testing and/or participate in exercise programs; she had normal motor strength in her upper and lower extremities; and she had normal sensation and coordination. (R. at 789, 792, 795-96.) Although McGhee reported she continued to have headaches, she stated they were better controlled. (R. at 787, 790.)

On August 29, 2016, Dr. David E. Attarian, M.D., a physician with Duke Health, saw McGhee for her complaints of left knee pain. (R. at 482-83.) Examination of McGhee's left knee showed some loss of flexion and extension but otherwise normal alignment and strength, normal ligament and patella and no effusion. (R. at 482-83.) Dr. Attarian diagnosed chronic left knee and leg pain without mechanical pathology of the left knee and advised McGhee to continue activities as tolerated and to avoid high impact or dangerous activities. (R. at 483.)

On September 22, 2016, McGhee saw Dr. Brian M. Enriquez, D.O., a physician with Wellmont Medical Associates, for complaints of neck and shoulder pain after slipping and falling the previous day. (R. at 567.) McGhee's examination findings were normal, except her neck had tenderness to palpation on the right with limitation of rotation. (R. at 570.) On October 12, 2016, McGhee saw Deana J. Duffield, N.P., a nurse practitioner with Wellmont Medical Associates, for complaints of left foot pain. (R. at 537, 572.) Duffield noted McGhee was wearing a brace on her left knee. (R. at 537, 572.) X-rays of McGhee's left foot were unremarkable. (R. at 538.) McGhee was fully oriented; her neck had normal range of motion; she had limited range of motion and tenderness in her left foot; and her mood, affect and behavior were normal. (R. at 537.)

On February 20, 2017, McGhee saw Dr. Whitman, and reported neck pain. (R. at 669.) McGhee stated her symptoms of depression were stable on medication. (R. at 669.) X-rays of McGhee's cervical spine showed straightening of the cervical curvature, possibly due to her positioning, muscle spasm, postoperative changes; and anterior fusion at the C6-C7 disc space. (R. at 550-51.) McGhee's neck and musculoskeletal system had normal range of motion; she was fully oriented; she had normal reflexes and no cranial nerve deficit; and her mood, affect, behavior, judgment and thought content were normal.[7] (R. at 672.) On April 25, 2017, McGhee complained of headaches. (R. at 541.) McGhee's speech was normal; she exhibited no focal findings or movement disorder; her deep tendon reflexes were normal and symmetric; she had normal muscle tone and strength; and her gait and station were normal. (R. at 544.) Dr. Whitman diagnosed acute non-intractable headache, unspecified headache type. (R. at 544.) On May 30, 2017, McGhee reported her symptoms of depression were stable on medication. (R. at 861.)

On July 24, 2017, Dr. Whitman completed a mental assessment, finding McGhee had no limitations in her ability to maintain personal hygiene and attire appropriate to a work setting and to be aware of normal hazards and take appropriate precautions. (R. at 778-80.) She opined McGhee had slight limitations in her ability to follow one- or two-step instructions to carry out a task; to initiate and perform a task that she knows how to do; and to make plans independently of others. (R. at 778-79.) Dr. Whitman found McGhee had a moderate limitation resulting in fair ability to recognize a mistake and correct it or identify and solve problems; to use reason and judgment to make work-related decisions; to manage psychologically based symptoms; to cooperate with others or ask for help when needed; to handle conflicts with others; and to understand and respond to social cues. (R. at 778-80.)

---

[7] McGhee's examination findings remained unchanged at subsequent office visits, except it was noted McGhee wore a left knee brace. (R. at 691, 840, 847, 852, 859, 864, 868-69.)

She found McGhee had a seriously limited ability to sequence multi-step activities; to ignore or avoid distractions while working; to adapt to changes; to distinguish between acceptable and unacceptable work performance; to set realistic goals; to respond to requests, suggestions, criticism, correction and challenges; and to keep social interactions free of excessive irritability, sensitivity, argumentativeness or suspiciousness. (R. at 778-80.) Dr. Whitman opined McGhee had no functional ability to work at an appropriate and consistent pace or complete tasks in a timely manner; to work close to or with others without interrupting or distracting them; to sustain an ordinary routine and regular attendance at work; and to work a full day without needing more than the allotted number or length of rest periods during the day. (R. at 778-79.)

On July 26, 2017, Dr. Whitman completed a physical assessment, finding McGhee was diagnosed with chronic left knee pain, which constantly interfered with the attention and concentration required to perform simple work-related tasks. (R. at 781-82.) She found McGhee would need to recline or lie down during an eight-hour workday in excess of the typical 15-minute break in the morning, the 30 to 60 minute lunch and the typical 15-minute break in the afternoon; she could walk less than one city block without interruption; she could sit one hour in an eight-hour workday; she could stand/walk for zero hours in an eight-hour workday; could occasionally lift and carry items weighing less than 10 pounds and never lift and carry items weighing 10 pounds or greater; she was limited to grasping, turning and twisting objects, fine manipulation and reaching, bilaterally, 50 percent of an eight-hour workday; and she would be absent from work more than four days a month. (R. at 781-82.)

On August 9, 2017, McGhee saw Dr. Shields, and reported she stopped taking the medication Lamictal because she believed it made her gain weight. (R. at 783.) She stated she was taking gabapentin, which did not control her migraines as well.

(R. at 783.) McGhee's extremities had no edema and normal digits; her mood and affect were normal; her attention skills were normal; her speech was fluent and spontaneous; she exhibited no involuntary movements or obvious motor deficits; and her gait and station were sufficient to undergo exercise testing and/or participate in exercise programs. (R. at 785.) McGhee elected to restart Lamictal. (R. at 785-86.)

On October 13, 2017, McGhee reported her anxiety was stable on medication and she could perform her activities of daily living. (R. at 837.) On November 6, 2017, McGhee saw Charise N. Battel, F.N.P., a family nurse practitioner with Wellmont Medical Associates, for bronchitis, wheezing and cough. (R. at 835.) McGhee denied decreased concentration, dysphoric mood, sleep disturbance, suicidal ideations and anxiety. (R. at 834.) McGhee's neck had normal range of motion; her musculoskeletal system exhibited normal range of motion and no edema or tenderness; she had cervical adenopathy on the right; she was fully oriented; she had normal reflexes, muscle tone and coordination; and her mood, affect, behavior, judgment and thought content were normal. (R. at 834-35.)

On November 16, 2017, William Carne, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), finding McGhee had mild limitations in her ability to understand, remember or apply information; to interact with others; to concentrate, persist or maintain pace; and to adapt or manage herself. (R. at 124-25.) He found McGhee's depressive, bipolar and related disorder and anxiety and obsessive-compulsive disorders were nonsevere. (R. at 124.) Carne noted McGhee's history of depression and anxiety, but he found she reported that her medication controlled her symptoms and her mental status examinations were normal. (R. at 125.) On February 15, 2018, Linda Dougherty, Ph.D., a state agency

psychologist, completed a PRTF which mirrored that of Carne from November 16, 2017. (R. at 143-44.)

On November 16, 2017, Dr. Robert McGuffin, M.D., a state agency physician, found McGhee could lift and carry items weighing up to 20 pounds occasionally and up to 10 pounds frequently; sit and stand and/or walk up to six hours each in an eight-hour workday; push/pull as much as the lift/carry restrictions; balance without limitation; occasionally climb, stoop and crouch; never kneel or crawl; and she should avoid concentrated exposure to noise. (R. at 126-28.) Dr. McGuffin indicated no manipulative, visual or communicative limitations. (R. at 127.) On February 16, 2018, Dr. Jack Hutcheson, M.D., a state agency physician, completed a medical assessment, which mirrored that of Dr. McGuffin from November 16, 2017. (R. at 145-47.)

On January 15, 2018, McGhee saw Battel and reported that, other than taking Soma, she had not taken any pain medication until she experienced an exacerbation of knee pain the previous July. (R. at 819.) McGhee reported her migraine symptoms and depression were controlled with medication. (R. at 820.) McGhee reported decreased concentration but denied sleep disturbance, suicidal ideation and anxiety. (R. at 822.) McGhee's examination findings were normal except she had left knee tenderness and back pain and spasm. (R. at 823.) On April 8, 2018, McGhee saw Dr. Whitman, and reported her right upper quadrant pain had resolved. (R. at 1039.) She stated she had decreased motivation and she did not believe her medication was helping her symptoms of anxiety. (R. at 1039.) McGhee's examination findings remained unchanged. (R. at 1041-42.)

On April 23, 2018, McGhee saw Dr. Whitman, and reported Soma made her pain more tolerable. (R. at 1071.) McGhee was in no acute distress; she had a normal

gait; she had no clubbing or cyanosis; she had no joint swelling or involuntary movements; she wore a brace on her left knee; she was fully oriented; her insight and judgment were intact; and her affect and mood were normal. (R. at 1073.) On July 23, 2018, McGhee saw Dr. Whitman, and reported joint pain and stiffness, generalized muscle aches and back pain, but stated she was doing well. (R. at 1065.) She stated her chronic neck pain remained stable with medication. (R. at 1065.) McGhee stated her blood pressure and depression were doing well. (R. at 1065.) Her examination findings remained unchanged at this visit, as well as her office visits in October and November 2018. (R. at 1057, 1062, 1067.)

On March 6, 2019, McGhee saw Dr. Whitman, and reported she was "doing okay," except she had some epigastric and right upper quadrant pain. (R. at 1049.) An ultrasound of McGhee's abdomen showed nonspecific hyperechoic foci within the liver, and an MRI was recommended. (R. at 1048.) Dr. Whitman included abdominal pain and nausea to her diagnosis. (R. at 1052.) McGhee was in no acute distress; she had a normal gait; she had no clubbing or cyanosis; she had no joint swelling or involuntary movements; she was fully oriented; her insight and judgment were intact; and her affect and mood were normal. (R. at 1051-52.) On March 25, 2019, an MRI of McGhee's abdomen showed a normal size liver with signal changes suggesting steatosis. (R. at 1044.) On May 20, 2019, McGhee saw Dr. Whitman, and reported she felt like her hand was "jerking." (R. at 1029.) She reported she had removed a tick from her neck and experienced joint pain and chills since doing so. (R. at 1029.) McGhee's examination findings remained unchanged. (R. at 1029.) On June 3, 2019, McGhee saw Dr. Whitman, and reported she was doing better since her previous visit but still had some tremor in her hands. (R. at 1022.) Dr. Whitman suggested her tremor could be related to anxiety. (R. at 1022.) McGhee's examination findings remained unchanged except she had a tremor when she held her hand out slightly, but no action tremors were noted. (R. at 1022.)

*III. Analysis*

The Commissioner uses a five-step process in evaluating SSI claims. *See* 20 C.F.R. § 416.920 (2021). *See also Heckler v. Campbell,* 461 U.S. 458, 460-62 (1983); *Hall v. Harris,* 658 F. 2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 416.920(a)(4) (2021).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C. § 1382c(a)(3)(A)-(B); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano,* 617 F.2d 1050, 1053 (4th Cir. 1980).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In determining whether substantial evidence supports the Commissioner's decision, the

court also must consider whether the ALJ analyzed all the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers,* 131 F.3d 438, 439-40 (4th Cir. 1997).

McGhee argues the ALJ erred by failing to find Dr. Whitman's opinion highly persuasive. (Plaintiff's Memorandum Of Law In Support Of A Social Security Appeal, ("Plaintiff's Brief"), at 5-10.) McGhee also argues the ALJ erred by failing to find she had a severe mental impairment. (Plaintiff's Brief at 1, 11-14.) Particularly, McGhee argues the ALJ failed to find she met the listing for anxiety and obsessive-compulsive disorders found at Part 404, Subpart P, Appendix 1, § 12.06. (Plaintiff's Brief at 1, 11-14.)

McGhee filed her application in June 2017; thus, 20 C.F.R. § 416.920c governs how the ALJ considered the medical opinions here.[8] When making a residual functional capacity assessment, the ALJ must assess every medical opinion received in evidence. The regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight" to any medical opinions or prior administrative medical findings, including those from the claimants' medical sources. 20 C.F.R. § 416.920c(a) (2021). Instead, an ALJ must consider and articulate how *persuasive* he finds all the medical opinions and all prior administrative medical findings in a claimant's case. *See* 20 C.F.R. § 416.920c(b), (c)(1)-(5) (2021) (emphasis added). Moreover, when a medical source provides more than one opinion or finding, the ALJ will evaluate the persuasiveness of such opinions or findings "together in a single analysis" and need not articulate how he

---

[8] 20 C.F.R. § 416.920c applies to claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)).

or she considered those opinions or findings "individually." 20 C.F.R. § 416.920c(b)(1) (2021).

The most important factors in evaluating the persuasiveness of these medical opinions and prior administrative medical findings are supportability and consistency, and the ALJ will explain how he considered these two factors in his decision. *See* 20 C.F.R. § 416.920c(b)(2). "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; *see also* 20 C.F.R. § 416.920c(c)(1) (2021). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; *see also* 20 C.F.R. § 416.920c(c)(2) (2021). The ALJ is not required to explain the consideration of the other three factors, including relationship with the claimant, specialization and other factors such as an understanding of the disability program's policies and evidentiary requirements.[9] *See* 20 C.F.R. § 416.920c(b)(2).

McGhee argues the ALJ erred by failing to find that she suffered from a severe mental impairment. Particularly, McGhee argues the ALJ failed to find she met the listing for anxiety and obsessive-compulsive disorders found at Part 404, Subpart P, Appendix 1, § 12.06. (Plaintiff's Brief at 1, 11-14.) The Social Security regulations define a "nonsevere" impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. *See*

---

[9] An exception to this is that when the ALJ finds that two or more "medical opinions or prior administrative medical findings about the same issue are both equally well-supported [] and consistent with the record [] but are not exactly the same," the ALJ will explain how he considered the other most persuasive factors including: the medical source's relationship with the claimant, specialization and other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 416.920c(b)(3) (2021).

20 C.F.R. § 416.922(a) (2021). Basic work-related mental activities include understanding, remembering and carrying out simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. *See* 20 C.F.R. § 416.922(b) (2021). Although the Social Security regulations do not define the term "significant," this court previously has held that it must give the word its commonly accepted meanings, among which are, "having a meaning and deserving to be considered." *Townsend v. Heckler*, 581 F. Supp. 157, 159 (W.D. Va. 1983). In *Townsend*, the court also noted that the antonym of "significant" is "meaningless." 581 F. Supp. at 159.

In evaluating the severity of mental impairments, the ALJ must first determine the degree of functional loss in four areas considered essential to the ability to work: (1) understanding, remembering or applying information; (2) interacting with others; (3) the ability to concentrate, persist or maintain pace; and (4) adapting or managing oneself. *See* 20 C.F.R. § 416.920a(c)(3) (2021). These areas are rated on the following five-point scale: none, mild, moderate, marked and extreme. *See* 20 C.F.R. § 416.920a(c)(4) (2021). The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity. *See* 20 C.F.R. § 416.920a(c)(4). If a claimant's degree of limitation in all these areas is rated as "none" or "mild," the Commissioner generally will find that the claimant's impairment is not "severe" unless the evidence otherwise indicates that there is more than a minimal limitation in the ability to do basic work activities. *See* 20 C.F.R. § 416.920a(d)(1) (2021).

Here, the ALJ found McGhee had mild limitations in all four areas. (R. at 21-22.) In the area of understanding, remembering and applying information, the ALJ noted McGhee's mental status examinations documented normal insight, judgment

and thought content throughout, without any obvious memory deficits. (R. at 21-22.) In the area of interacting with others, the ALJ explained that McGhee's treating providers consistently observed her to have a normal mood, affect and behavior. (R. at 22.) In the area of maintaining concentration, persistence or pace, the ALJ explained that McGhee's mental status examinations did not show any obvious concentration deficits, psychomotor slowing or other objective deficits. (R. at 22.) He noted that, in 2017, McGhee's neurologist found that she displayed appropriate mood and affect; she had normal attention and language skills for her age; and her speech was fluent and spontaneous. (R. at 22.) In the area of adapting or managing herself, the ALJ noted McGhee's anxiety and depression were managed with routine medications prescribed by her primary care physician and McGhee's mood, affect and behavior were consistently normal. (R. at 22.)

In making his findings as to McGhee's mental impairments, the ALJ stated he found Dr. Whitman's July 2017 assessment unpersuasive. (R. at 29.) Dr. Whitman opined McGhee was seriously limited or had no functional ability in several areas, such as the abilities to sequence multi-step activities, to work at an appropriate and consistent pace; to sustain an ordinary routine and regular attendance at work; and to distinguish between acceptable and nonacceptable work performance, among others. (R. at 29.) The ALJ noted that, in contrast, Dr. Whitman's treatment notes typically described McGhee's mental health symptoms as stable, though requiring medication adjustments from time to time. (R. at 29.) The ALJ noted that McGhee did not require inpatient or similarly intensive interventions and her observed mental status was consistently described as intact. (R. at 29.) The ALJ noted that McGhee's observed mental status was consistently described as intact in Dr. Whitman's treatment notes and elsewhere in terms of her mood, affect, behavior, judgment, insight and thought content. (R. at 29.)

The ALJ found the state agency psychologists' assessments persuasive because they were well-supported and consistent with other evidence. (R. at 29.) The state agency psychologists found that McGhee had mild limitations in her ability to understand, remember or apply information; to interact with others; to concentrate, persist or maintain pace; and to adapt or manage herself. (R. at 29.) As noted by the ALJ, the state agency psychologists noted that McGhee's depression and anxiety appeared to be well-controlled on medication. (R. at 29.)

Treatment notes from Dr. Whitman and other health care providers at Wellmont Medical Associates consistently show McGhee's examination findings revealed she was fully oriented; her mood, affect and behavior were normal; she had intact judgment and insight; and her thought content was normal. Dr. Shields also noted that McGhee had a normal mood and affect; her attention and language skills were normal; her speech was fluent and spontaneous; and fund of knowledge was normal. Although McGhee reported decreased concentration in January 2018 and decreased motivation in April 2018, her mental examination findings were normal. In fact, McGhee routinely denied suicidal ideations, behavioral problems, confusion, dysphoric mood, decreased concentration and agitation on numerous occasions. Furthermore, McGhee reported her depression, anxiety and insomnia were stable on medication. "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler,* 785 F.2d 1163, 1166 (4th Cir. 1986). Based on this, I find that the ALJ properly evaluated the medical evidence as to McGhee's mental residual functional capacity.

McGhee argues the ALJ failed to find her anxiety disorder met the listing for anxiety and obsessive-compulsive disorders found at Part 404, Subpart P, Appendix 1, § 12.06. (Plaintiff's Brief at 12.) To meet the listing for anxiety disorder found at § 12.06(A), your anxiety disorder must be characterized by three or more of the

following: (a) restlessness; (b) easily fatigued; (c) difficulty concentrating; (d) irritability; (e) muscle tension; or (f) sleep disturbance. *See* 20 C.F.R. Pt. 404, Subpt. P, Appx. 1, § 12.06 (A)(1)(a-f) (2021). McGhee contends her impairment met this listing because Dr. Shields's treatment notes show she had insomnia, sleep disturbance, irritability and memory lapses or loss. Dr. Shields noted McGhee made these complaints at her initial office visit in July 2016. At follow up visits, McGhee reported insomnia and sleep disturbances. Despite making these complaints, Dr. Shields found McGhee's mood and affect were normal, her attention skills were normal, and her speech was fluent and spontaneous. Dr. Shields treated McGhee for her complaints of migraine headaches, which McGhee reported were controlled with medication. *See Gross,* 785 F.2d at 1166. As noted above, although McGhee reported decreased concentration in January 2018 and decreased motivation in April 2018, her mental examination findings were normal. Based on this, I find that substantial evidence exists to support the ALJ's finding that McGhee's impairment did not meet or equal § 12.06(A).

McGhee argues the ALJ erred by failing to find Dr. Whitman's opinion highly persuasive. A claimant's residual functional capacity refers to the most the claimant can still do despite her limitations. *See* 20 C.F.R. § 416.945(a) (2021). The ALJ found McGhee had the residual functional capacity to perform sedentary work, except she could occasionally perform postural activities but could not kneel, crouch, crawl or climb ladders, ropes or scaffolds; she could occasionally reach overhead; she should avoid use of foot controls with the left lower extremity; she could occasionally be exposed to noise and vibrations, but should avoid exposure to industrial hazards; and she required a sit/stand option for one to two minutes every hour. (R. at 23.)

In making this residual functional capacity finding, the ALJ stated he found Dr. Whitman's July 2017 medical assessment unpersuasive because her proposed limitations were not well supported by, and were highly inconsistent with, the largely normal objective findings in Dr. Whitman's own treatment notes. (R. at 28.) In addition, the ALJ noted other medical care providers also reported grossly normal motor and sensory function despite McGhee's pain. (R. at 28.) In October 2017, Dr. Whitman noted that medications helped McGhee do her activities of daily living despite her ongoing back and knee pain. (R. at 28-29.) Dr. Whitman, as well as other medical care providers at Wellmont Medical Associates, routinely reported that McGhee's neck and musculoskeletal system had normal range of motion; she had normal reflexes and no cranial nerve deficits; she had normal muscle tone and strength; and her gait and station were normal. In 2016, x-rays of McGhee's left hip, lumbar spine and left foot were unremarkable. Dr. Shields reported McGhee's extremities revealed no edema and normal digits; she exhibited no involuntary movements or obvious deficits; she had normal motor strength in her upper and lower extremities; and she had normal sensation and coordination. McGhee reported her neck pain was stable on medication and Soma made her pain tolerable and she was able to perform her activities of daily living. *See Gross,* 785 F.2d at 1166.

The ALJ stated he found the medical assessments of the state agency physicians unpersuasive because they were inconsistent with the record as a whole. (R. at 28.) The ALJ noted that the totality of the evidence supported more restricted exertional and postural limitations considering the cumulative effect of McGhee's medically determinable impairments, particularly her knee pain, which required the use of a knee brace and chronic back pain. (R. at 28.) The ALJ also imposed greater environmental limitations, as well as additional limitations, such as overhead reaching and greater lifting and carrying limitations. (R. at 28.)

In addition, in terms of activities of daily living, McGhee reported she had no difficulty performing her personal care; helped care for her youngest child, who was five years old on the date she filed her application; prepared meals daily; washed laundry with help; shopped in stores; visited with family; and watched television and read books all day.

Based on this, I find substantial evidence exists to support the ALJ's consideration of the medical evidence and his mental residual functional capacity finding.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1.   Substantial evidence exists in the record to support the ALJ's consideration of the medical evidence;

2.   Substantial evidence exists in the record to support the ALJ's residual functional capacity finding; and

3.   Substantial evidence exists in the record to support the Commissioner's finding that McGhee was not disabled under the Act and was not entitled to SSI benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny McGhee's a motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioners decision denying benefits.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Senior United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:    August 25, 2022.

/s/ *Pamela Meade Sargent*

UNITED STATES MAGISTRATE JUDGE